# Richmond.

## J. R. CASKIE, TRUSTEE, ET AL. v. J. W. DURHAM.

March 21, 1929.

The opinion states the case.

*Caskie, Frost & Coleman*, for the appellant.

*Mrs. Janet Stuart Durham*, for the appellee.

CAMPBELL, J., delivered the opinion of the court.

In March, 1925, J. R. Caskie, trustee under a deed of trust from Thomas E. McDaniel, covering property in Campbell county, recovered a judgment in the Circuit Court of Campbell county for $765.00, with interest and costs, against J. W. Durham and J. P. McDaniel, for a deficit on a resale of the property which had been bid in by McDaniel, in the name of J. W. Durham, at the trustee's sale.

The judgment was rendered in a chancery suit brought by the trustee, after the purchasers had failed to comply with the terms of sale and pay for the property, and in which suit the trustee asked for a resale at the risk of the purchasers (only $100.00 having been paid on the purchase price), and judgment for any deficit. Durham had denied the agency of McDaniel, and the trustee therefore united both in the suit to have the question determined.

Process in the suit was duly issued, and, as to Durham, was returned by the sergeant of the city of Richmond, showing that it had been executed by serving a copy on "J. W. Durham in person."

Neither Durham nor McDaniel made any appearance in the suit, the property was resold and the judgment in question for the deficit was rendered on the bill, taken for confessed, and the case was dismissed from the docket. Later the judgment of March, 1926, was docketed in the city of Richmond.

In September, 1927, J. W. Durham filed the bill in the instant suit in which he denied the agency of McDaniel, denied that he had been served with process in the former suit and asked that the judgment as to him be declared null and void and that the plaintiffs be enjoined from enforcing it.

To this bill, J. R. Caskie, trustee, and M. M. Locker, the beneficial owner of the judgment, filed a special plea in which they set up that process in the previous suit was in fact served on Durham, and that the return of the officer thereon showing personal service was conclusive of the fact, and having failed to appear and make defense, he was bound by the proceedings, and asked that the bill be dismissed. A certified copy of the return was filed with the plea and is as follows:

"Executed in the city of Richmond, Va., July 11, 1924, by delivering a true copy of within summons to J. P. McDaniel and J. W. Durham in person.

"JOHN G. SAUNDERS, Sergeant.
"By J. H. Floyd, D. S."

There was a motion to strike out the special plea, which was overruled, and thereafter certain depositions were taken in which Durham denied that McDaniel was his agent or had any authority from him to purchase the property at the trustee's sale, and likewise under-

took to prove that process in the former suit had not been served on him. Objection to all of such evidence was duly made as shown by the record, with reasons therefor.

On December 1, 1927, the instant case was heard upon the bill, answer, plea and depositions of witnesses, and the court, without taking any further specific action on the special plea or in terms overruling same, entered the decree now complained of, setting aside and declaring null and void, as to J. W. Durham, the judgment of March, 1926, rendered in the previous suit, and directing the clerks of the courts where is was recorded, to so mark judgment.

The only assignment of error is the action of the court in holding invalid the return of the officer as to J. W. Durham, and in setting aside the judgment of March, 1926, obtained by Caskie, trustee, against Durham.

The main allegations of the bill of complaint are that the judgment is unjust and illegal; that complainant had a full and complete defense to the suit in which it was rendered; that complainant never received a summons or other notice of the pendency of the suit; that J. P. McDaniel, a man of bad character, was guilty of falsehood and perpetrated a fraud when he represented himself to be complainant's agent; that Caskie, trustee, did not exercise due care to prevent fraud at the sale of the deed of trust property, in that he did not require a cash deposit from McDaniel, the bidder, or require proof of McDaniel's agency. There is no allegation in the bill that the allged false return of the officer was procured or induced by the trustee, or that he was in any way connected with the alleged deception.

An examination of the cases, both State and Federal, shows the weight of authority to be in support of the decision of the trial court, that the return of an

officer is not a verity. See *Nuttallburg Smokeless Fuel Co.* v. *First National Bank* (1921), 89 W. Va. 438, 109 S. E. 766, and authorities cited.

That such was the state of the law was recognized in *Preston* v. *Kindrick*, 94 Va. 762, 27 S. E. 588, 64 Am. St. Rep. 777. Judge Buchanan, delivering the opinion of the court, said: "The question involved in this appeal is the right of a party to go into a court of equity to obtain relief against a decree rendered in a cause to which he was made a party, on the ground that no process was served upon him, when the process appears to have been executed by the return of the sheriff, and by the recital in the decree of the court taking the bill for confessed.

"The decisions of the court upon this question are conflicting, and the reasoning of the judges is not entirely satisfactory upon either side.

"One line of cases holds that a party who had been injured by a judgment rendered in his absence may have relief in equity if he can succeed in showing that he was not summoned, and did not hear of the proceedings in time to make defense or to obtain a new trial, and that he has a meritorious defense. Freem. on Judgm., section 495.

"Another class of cases holds that a court of equity cannot grant relief in such a case unless the false return of service was procured or induced by the plaintiff, or he can in some way be connected with the deception; thus likening the case to those cases in which the defendant has been prevented from setting up his defense by the trickery or fraud of his adversary.

"The rule of this latter class of cases is perhaps the better doctrine.

"The risk of opening a judgment or decree on an allegation which, like that of the failure to serve proc-

ess, or the want of notice, depends upon the uncertain testimony of witnesses, is so great that the injured party should be left to his remedy in the same case where relief can be had in that case, or to his remedy against the officer who has made the false return, unless that return was in some way procured or induced by the plaintiff, or he is in some way responsible for the defendant's want of notice of the suit, or of the proceedings therein.

"Counsel for the parties have not cited any decision of this court upon this precise point, nor have we, in our examination, been able to find such a case.

"In *Goolsby* v. *St. John*, 25 Gratt. [66 Va.] 146, 156, where it did not appear affirmatively from the return that summons had been served in the manner prescribed by law, Judge Moncure said, in discussing that question, that 'if the summons had been executed in the manner prescribed by law, and that fact had appeared by the return made thereon by the sheriff, then the judgment would have been conclusive, even though the defendants may not have had actual knowledge of the existence of the action before the judgment was rendered.'

"Such a judgment is sustained, not because a judgment rendered without notice is good, but because the law will not permit any proof to weigh against that which the policy of the law treats as absolute verity, and remits the party injured to his remedy at law against the person by whom the record was falsified.

"The presumption that the powers committed to judicial tribunals of general jurisdiction have been properly exercised is essential to the repose and safety of society, and the inconvenience of allowing it to be met and overcome by parol evidence is greater than any benefit that could be derived from a different

course. Public safety demands that when such a tribunal has pronounced judgment its adjudication on that subject shall be as conclusive on the question whether the defendant was duly notified as on any other point essential to the determination of the cause. 1 Smith's Lead. Cas. 1119, 1127, etc."

*Preston* v. *Kindrick, supra,* was followed by *Ramsburg* v. *Kline,* 96 Va. 466, 31 S. E. 608. The question presented in that case was identical with the question now under consideration, Judge Harrison, delivering the opinion of the court. It is there held (syllabus): "The return of an officer showing that a summons to commence a suit has been duly executed cannot be contradicted by a defendant, unless it can be shown that the plaintiff procured or induced the return, or was in some way connected with the deception. It is immaterial whether the objection to the return be made at law or in equity, the rule is the same." And in the opinion it is said: "There would be no end to litigation, and little security for the titles to property, if the final judgments of courts, which should import *incontrollable* (incontrovertible) verity and credit, could be thus lightly dealt with. It is true hard cases may arise under the most satisfactory general rule that can be adopted, but, all things considered, harm is less likely to result from enforcing the rule laid down in *Preston* v. *Kindrick* than would occur if interested parties were permitted to contradict the duly executed official return of an officer, and thus destroy the judgment which was based thereon."

This decision was reaffirmed in *Sutherland* v. *People's Bank,* 111 Va. 515, 69 S. E. 341. Judge Keith, delivering the opinion, quotes with approval from 4 Minor's Inst., Pt. I, page 1042, as follows: "The better opinion is believed to be that the officer's

return upon process, although it be false, is still conclusive in the suit  *  *  *.  It is no doubt a hardship upon one against whom a judgment is rendered upon such false return, he having had no knowledge of the pendency of the suit and no opportunity to defend himself; but, on the other hand, it would occasion delays and hindrances in the administration of justice which would work still greater mischief, if it were allowed to impeach the returns of sworn officers and so annul the proceedings founded thereon."

The question of whether this court will adhere to or overrule its prior decisions on the doctrine of the verity of an officer's return has been most carefully considered, especially in view of the appealing nature of the instant case.  While we have the power to reverse our former rulings, we are of opinion that the doctrine of the verity of an officer's return is too firmly entrenched in our jurisprudence to permit its uprooting in order to meet the exigencies of any particular case.

We are of opinion that the decree complained of should be reversed and the bill dismissed.

*Reversed.*